### CARRERE v. DUN et al.

(Supreme Court, Appellate Division, First Department.  November 12, 1897.)

COMPROMISE OF CLAIM—EVIDENCE.

 In an action for damages for breach of an alleged contract of employment, it appeared that plaintiff's assignor, the employé, had, in consideration of $100, executed an instrument under seal which recited his claim, and its denial by defendants, and \greement to compromise, and which expressly released defendants from the claim in suit. Thereafter, in writing to defendants, he referred to the period "since he left defendants' employ." In connection with the release, no misrepresentation, mistake, or fraud was. shown. *Held*, that the complaint was properly dismissed.

Appeal from trial term.

Action by Fannie Bean Carrere against R. G. Dun and others. From a judgment dismissing plaintiff's complaint on the merits, she appeals. Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, WILLIAMS, O'BRIEN, and INGRAHAM, JJ.

Wilson Lee Cannon, Jr., for appellant.
Henry B. Casey, for respondents.

WILLIAMS, J. The action was brought by the plaintiff, as assignee of her husband, William Carrere, to recover damages for a breach of a contract for employment. The case was tried before a

jury, and the court dismissed the complaint at the close of the plaintiff's evidence. The evidence given would have authorized the jury to find the making of a contract by the defendants, employing plaintiff for one year from April 1, 1894, to April 1, 1895, at a salary of $2,000 per year, payable monthly. He had been in the defendants' employ during the preceding year, and was just commencing on the second year, when, early in the month of April, 1894, a woman came to see him at the defendants' office, and demanded money of him; claiming to be his common-law wife, and that he had committed some crime in former years,—her object being to get money from him by threats of exposure. Mr. Carrere thereupon, with the advice of Mr. Green, the auditor of defendants, by whom he was employed, and under whose direction he worked, caused the arrest of this woman. When the matter came before the police court, it got into the newspapers, and was reported in such a manner, and with such scandalous details, that defendants thought it better for their own reputation that Carrere should not appear in their office in the daytime for a few days, and they hoped the matter might quiet down so that he could return. In the meantime, Carrere was permitted to come to the office and do his work at night, and thus keep up his books. This course was adopted from April 18, 1894, during the remainder of the month, and at the end of the month he was paid his salary by defendants,—$166.66. It was continued during some portion of the month of May, 1894, also, but the defendants seemed to have been in doubt as to the propriety of retaining Carrere in their employ. May 3, 1894, Carrere asked Mr. Green for money, and procured $200, for which he gave a receipt in full of all claims and demands. Just when Carrere ceased working nights, does not appear; but he seems to have done little work after the payment of the $200, May 3, 1894. On the 19th of June, 1894, Carrere wrote Mr. Dun that he had been practically suspended from his position with defendants since the middle of April, and asked to be informed if he was to be reinstated, saying that there were circumstances which led him to doubt whether there was any longer any design to restore him to his position. June 30, 1894, Carrere wrote Green that the defendants had no just cause to drop him from the pay roll, and asked for his salary, and threatened to place his claim in lawyer's hands. Green replied to this letter, July 2, 1894, merely making an appointment to meet him at the Astor House, New York City, the next day. They did not meet at the time designated, however. July 5, 1894, Green wrote Carrere to meet him that day, at 12 o'clock, at the Astor House. That meeting was had, and Carrere urged Green to get him some money from the defendants. Green said he would go and see the defendants, and thought he could get some money, and would return and meet him again at 4 p. m. the same day. They met again at 4 p. m. the same day, at the same place; and Green said he had seen the defendants, and that, after considerable conversation, they had agreed to pay Carrere $100, provided he would sign a paper which he then produced. Carrere read the paper, and they had a talk about it, Green saying that defendants and he (Green) would do all they could for Carrere; would never see him want; would do all they could to find Carrere further employment;

that they could not have him back in the city office, but would give him another position when there was an opportunity. Green advised Carrere to sign the paper, and said it was to gratify Mr. Dun, and relieve his partners as much as possible from any misrepresentations that had been made. Thereupon Carrere signed the paper, and Green paid him $100. This paper recited, in plain terms, that Carrere had made a claim against the defendants that he was employed by them by the year, and that he had been wrongfully dismissed from their employ before the expiration of the term of employment, and that this claim was denied by the defendants in all its parts, and that the parties had agreed to compromise the claim by the payment of $100 by the defendants to Carrere, and the payment of that sum had been made; and then it, in express terms, in consideration of the sum paid, released and discharged the defendants from the alleged contract of employment, and from any and all claims and demands which he had or could have against them, growing out of or founded upon the contract; and it was executed by Carrere under seal. There is no dispute but that Carrere was an intelligent man, and understood fully the purport of this paper before he signed it, and he has never returned or offered to return to the defendant the $100, or any part of it. On the 25th of December, 1894, Carrere made an assignment to plaintiff, his wife, of his claim against the defendants, and Dun personally, for moneys due him up to September 1, 1894; and October 9, 1894, he further assigned to her all his claim under the contract of employment from April 1, 1894, to April 1, 1895. In August, 1894, Carrere got in trouble again, was arrested for alleged larceny, and needed bail and $125 to arrange the matter, so that the prosecution would be dropped. He wrote a letter to Mr. Douglass, one of defendants, August 1, 1894, in which he said that, notwithstanding his efforts, since he left defendants' employ, he had been unable to find occupation, and that his creditors were pressing him, and asked for a loan of $125. The plaintiff wrote about this time to Mr. Green about the efforts of her husband to get work, and about the trouble he was in, and his need of the $125, and her efforts to procure bail for him; and on August 21, 1894, she had an interview with Mr. Douglass, and explained the need of the $125 to pay the woman from whom it was claimed Mr. Carrere had taken this amount of money. She claimed that the defendants owed Carrere a considerable amount for salary. Mr. Douglass denied they owed him anything, and told her they had Carrere's receipts. He finally gave her $125, and she promised to send a receipt for it. This money was used to pay the claim for which Carrere had been arrested. The correspondence discloses efforts made by Mr. Green and the defendants to aid Carrere in securing other employment. This action was commenced October 16, 1894. The trial was before a jury.

The dismissal of the complaint was asked for on the ground of the release of July 5, 1894, on payment of the $100, and this was the ground the court made the ruling upon. Whatever may be said as to this specific ground for dismissing the complaint, it was quite clear that, if permitted to attack the receipt for either fraud or mutual mistake, the plaintiff entirely failed to establish such fraud or mistake;

824

and this claim was also made as a ground of a dismissal of the complaint. There was no mistake on the part of either party. None is or could be claimed. The release stated the position of the parties so clearly that Carrere could not fail to understand it. As to the claim of fraud, there was no misrepresentation of any existing fact which induced Carrere to make the release. There were, at most, promises as to the future,—to help Carrere secure other employment, —which could not be made the basis of allegations of fraud. These promises appear to have been honestly made, and to have been reasonably well kept, considering the conduct of Carrere afterwards, which resulted in his arrest in August. Carrere understood after this release was given that he was out of defendant's employ. In his letter of August 1, 1894, already referred to, he said, "Notwithstanding my efforts since I left your employ, I have been unable to find occupation." The release was binding upon Carrere and his wife, the plaintiff, and was a complete defense to the action, and nothing in the evidence given on the trial avoided the effect thereof. There was no question for the jury as to Carrere's having received the $100 upon his salary, rather than in consideration of the release. The defendants denied the employment for the year which plaintiff alleged. The money was offered and received as a compromise of the differences between the parties, and the release given in consideration of the $100.

The complaint was very properly dismissed, and the judgment appealed from should be affirmed, with costs. All concur.